UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| GLU MOBILE INC., NICCOLO DE MASI, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| NICK EARL, ERIC BALL, ANN MATHER, | : **SECURITIES EXCHANGE ACT OF** |
| HANY NADA, BENJAMIN T. SMITH, IV, | : **1934** |
| GREG BRANDEAU, BEN FEDER, GABY | : |
| TOLEDANO, and DARLA K. ANDERSON, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Glu Mobile Inc. ("Glu Mobile" or the "Company") and the members of Glu Mobile's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Glu Mobile by Electronic Arts Inc., a Delaware corporation headquartered in Redwood City, California ("Electronic Arts") and Electronic Arts' affiliates.

2.  Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on March 12, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to the Company's stockholders. The Proxy

Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Giants Acquisition Sub, Inc. ("Merger Sub") will merge with and into Glu Mobile, with Glu Mobile surviving the merger and becoming a wholly-owned subsidiary of Electronic Arts (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Glu Mobile common share issued and outstanding will be converted into the right to receive $12.50 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Glu Mobile's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and Morgan Stanley & Co. LLC ("Morgan Stanley" and together with Goldman Sachs, the "Financial Advisors"), in support of their fairness opinions, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Glu Mobile's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Glu Mobile in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Glu Mobile common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Niccolo de Masi has served as a member of the Board since 2010 and as Executive Chairman of the Board since November 2016.

11. Individual Defendant Nick Earl has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Eric Ball has served as a member of the Board since October 2013.

13. Individual Defendant Ann Mather served as a member of the Board since September 2005.

14. Individual Defendant Hany Nada has served as a member of the Board since April 2005.

15. Individual Defendant Benjamin T. Smith, IV has served as a member of the Board since November 2010.

16. Individual Defendant Greg Brandeau has served as a member of the Board since September 2015.

17. Individual Defendant Ben Feder has served as a member of the Board since January 2017.

18. Individual Defendant Gaby Toledano has served as a member of the Board since December 2017.

19. Individual Defendant Darla K. Anderson has served as a member of the Board since March 2019.

20. Defendant Glu Mobile is incorporated in Delaware and maintains its principal offices at 875 Howard Street, Suite 100, San Francisco, California 94103. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "GLUU."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

23. Glu Mobile, together with its subsidiaries, develops, publishes, and markets a portfolio of free-to-play mobile games for the users of smartphones and tablet devices. It publishes titles primarily in four genres, including lifestyle, casual, role playing games, and sports and outdoors. The Company's portfolio of compelling games based on its intellectual property, such as Cooking Dash, Covet Fashion, Deer Hunter, Design Home, and Diner DASH Adventures, as

4

well as games based on or significantly incorporating third party licensed brands, including Kim Kardashian: Hollywood, MLB Tap Sports Baseball franchises, and Restaurant Dash with Gordon Ramsay, as well as Disney Sorcerer's Arena. It markets, sells, and distributes its games primarily through direct-to-consumer digital storefronts, such as the Apple App Store, Google Play Store, and others. The Company was formerly known as Sorrent, Inc. and changed its name to Glu Mobile Inc. in May 2005. Glu Mobile was incorporated in 2001 and is headquartered in San Francisco, California.

24.     On February 8, 2021, Electronic Arts announced that it and Glu Mobile had entered into a proposed transaction:

> REDWOOD CITY, Calif.--(BUSINESS WIRE)-- **Electronic Arts Inc. (NASDAQ: EA),** a global leader in interactive entertainment, and **GluMobile Inc. (NASDAQ: GLUU)**, a leading global developer and publisher of mobile games including *Design Home*, *Covet Fashion,* and *MLB Tap Sports Baseball*, have entered into a definitive agreement under which Electronic Arts will acquire Glu Mobile. Under the terms of the agreement, EA will acquire Glu for $2.1 billion in enterprise value. Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing a 36% premium to Glu's closing share price on February 5, 2021. Upon closing, the acquisition will be immediately accretive to Electronic Arts' total net bookings, and is expected to grow underlying profitability beginning in its first year.
>
> The acquisition will immediately add significant scale to Electronic Arts' mobile games business. The combination of Electronic Arts and Glu creates a leading mobile product portfolio that includes more than 15 top live services across fast-growing genres with a combined $1.32 billion in bookings over the last twelve months. Bringing together the best-in-class mobile development teams at Glu and Electronic Arts' mobile business, with a collective portfolio of powerful IP in sports, lifestyle, RPG, casual and other genres, and leveraging Electronic Arts' marketing and distribution strength to generate global reach, the combined organization will build on EA's network of 430 million players, including more than 100 million monthly active players in mobile, and expand to new audiences and demographics all over the world.
>
> "Our acquisition of Glu combines amazing teams and deeply-engaging products to create a mobile games leader with proven expertise across many fast-growing genres," said Andrew Wilson, CEO of Electronic Arts. "Mobile continues to grow as the biggest gaming platform in the world, and with the addition of Glu's games

and talent, we're doubling the size of our mobile business. With a deep IP portfolio and an expanding global audience, we'll deliver more exciting experiences for our players and drive further growth for Electronic Arts."

"This transaction is the culmination of the tremendous work of the Glu team to deliver world-class interactive experiences for our players, while driving business momentum that has led to strong financial and operational results. It represents a terrific outcome for all of our stockholders and other key constituents," said Nick Earl, CEO of Glu. "As part of Electronic Arts, we will continue capitalizing on the opportunities ahead in the expanding mobile gaming industry."

The strategic rationale for the acquisition includes:

- **Creating a Leading Mobile Portfolio Across Key Genres.** The complementary nature of Electronic Arts and Glu's successful products will create a portfolio that spans many of the biggest and most popular genres of mobile games, including sports, RPG, lifestyle, casual, and mid-core games. The combined organization will have a demographically diverse audience, with significant opportunities for franchise and market expansion.
- **Expanding Successful, Scalable Live Services.** Both Electronic Arts and Glu have proven success creating mobile live service games that deeply engage large communities over many years and deliver strong recurring revenue. The combined expertise of the two organizations unlocks potential for further success. Glu's franchises like *Design Home*, *Covet Fashion*, and *MLB Tap Sports Baseball* will benefit from Electronic Arts' global licensing and distribution capabilities to bring them to new markets and more players. Glu's expertise in building and monetizing sports and casual mobile games, combined with Electronic Arts' industry-leading IP in sports and beyond, will accelerate the creation of exciting new experiences for broad audiences.
- **Experienced Creative Leadership & Enhanced Team Capabilities.** Glu brings a talented team including more than 500 mobile game developers (and nearly 800 total employees), adding significant scale to Electronic Arts' mobile-focused organization. Glu's creative leaders are established and well-known to Electronic Arts, with similar focus on creating highly successful mobile games with longevity. The combination of proven mobile leadership, deeply talented teams, genre expertise, long-running franchises and IP, and technology across the two organizations will be a catalyst to delivering new experiences and further growth.
- **Accelerating Growth.** The combination of Electronic Arts and Glu will be a mobile growth engine. With strong, recurring revenue across a leading portfolio of live services, strength in key mobile genres, a deep roster of owned and licensed IP, access to a large-scale and growing player network, and ability to reach into new regions and markets, the acquisition will be immediately accretive to EA's total net bookings and is expected to grow underlying profitability beginning in its first year.

An investor presentation outlining the key aspects of the planned acquisition is available on EA's investor relations website, at ir.ea.com.

**Details on the Proposed Transaction**

The board of directors of each of Electronic Arts and Glu Mobile have approved the transaction and the Glu board recommends that Glu stockholders approve the transaction and adopt the merger agreement. Under the terms of the agreement, Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing an equity value of $2.4 billion, and a total enterprise value of $2.1 billion including Glu's net cash of $364 million. The transaction is anticipated to close in the quarter ending June 30, 2021, subject to approval by the Glu stockholders, the receipt of required regulatory approvals and other customary closing conditions.

**About Electronic Arts**

Electronic Arts (NASDAQ: EA) is a global leader in digital interactive entertainment. The Company develops and delivers games, content and online services for Internet-connected consoles, mobile devices and personal computers. In fiscal year 2020, EA posted GAAP net revenue of $5.5 billion. Headquartered in Redwood City, California, EA is recognized for a portfolio of critically acclaimed, high-quality brands such as EA SPORTS™ FIFA, Battlefield™, Apex Legends™, The Sims™, Madden NFL, Need for Speed™, Titanfall™ and Plants vs. Zombies™. More information about EA is available at www.ea.com/news.

EA SPORTS, Ultimate Team, Battlefield, Apex Legends, The Sims, Need for Speed, Titanfall and Plants vs. Zombies are trademarks of Electronic Arts Inc. Madden, NFL and FIFA are properties of its respective owners and used with permission.

**About Glu Mobile**

Glu Mobile (NASDAQ:GLUU) is a leading developer and publisher of mobile games. Founded in 2001, Glu is headquartered in San Francisco with additional locations in Foster City, Toronto and Hyderabad. With a history spanning over a decade, Glu's culture is rooted in taking smart risks and fostering creativity to deliver world-class interactive experiences for our players. Glu's diverse portfolio features top-grossing and award-winning original and licensed IP titles including, *Covet Fashion, Deer Hunter, Design Home, Diner DASH Adventures, Disney Sorcerer's Arena, Kim Kardashian: Hollywood* and *MLB Tap Sports Baseball* available worldwide on various platforms including the App Store and Google Play. For more information, visit www.glu.com or follow Glu on Twitter, Facebook and Instagram.

Covet Fashion, Deer Hunter, Design Home, Diner DASH, Tap Sports, Glu and Glu Mobile are trademarks of Glu Mobile Inc.

**Advisors**

J.P. Morgan Securities LLC is serving as exclusive financial advisor to Electronic Arts and Simpson, Thacher & Bartlett LLP is serving as legal counsel to Electronic Arts. Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC and UBS Securities LLC are serving as financial advisors to Glu. Fenwick & West LLP is serving as legal counsel to Glu.

* * *

25. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Glu Mobile's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Proxy Statement**

26. On March 12, 2021, Glu Mobile filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Glu Mobile Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Glu Mobile management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the

Company which are materially misleading. The Proxy Statement indicates that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Glu Mobile management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. The Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Bookings, Adjusted EBITDA, and Unlevered Free Cash Flow (including and excluding NOL impacts) but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

29. The Proxy Statement also fails to disclose the NOL impact that was taken into consideration when calculating the Company's Unlevered Free Cash Flows.

30. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

9

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

33. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9%; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1% to 3%; (iv) the company-specific inputs used by Goldman to apply the capital asset pricing model and all line items for the company-specific inputs, including Glu Mobile's target capital structure weightings, the cost of long-term debt, future applicable marginal

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

cash tax rate and a beta for Glu Mobile; (v) the Company's net cash as of December 31, 2020; and (vi) the fully diluted shares of Glu Mobile common stock.

34. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the estimated net debt of the Company as of December 31 of each of 2021, 2022, and 2023; and (ii) the inputs and basis for applying the discount rate of 8.5%.

35. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the acquisitions observed by Goldman Sachs; and (ii) the premia and prices paid in those acquisitions observed.

36. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose the inputs and basis for applying the discount rate of 8.8% to the resulting implied future equity value per share.

37. With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) the terminal values calculated for the Company; (ii) the inputs and assumptions underlying the range of discount rates ranging from 7.8% to 9.8%; and (iii) the Company's net debt as of December 31, 2020.

38. With respect to Morgan Stanley's *Illustrative Precedent Premiums* analysis, the Proxy Statement fails to disclose: (i) the transactions reviewed by Morgan Stanley; and (ii) the implied premium paid in those transactions to the acquired company's last trading day prior to announcement of acquisition and the acquired company's 30-day average closing share price prior to announcement.

39. With respect to the sales process, the Proxy Statement fails to disclose the rationale of retaining two financial advisors to assist the Board in recommending the Proposed Transaction.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the Financial Advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Glu Mobile within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Glu Mobile, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Glu Mobile, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Glu Mobile, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 12, 2021

**OF COUNSEL:**

**MELWANI & CHAN LLP**
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

**RIGRODSKY LAW P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5306
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email: hwm@rl-legal.com

*Attorneys for Plaintiff*